CHRISTOPHER M. RUSSELL, Respondent, v. NINIAN M. LETTON, Appellant.

Kansas City Court of Appeals, February 19, 1894.

1. **Fraudulent Conveyances:** PREFERENCES: SCIENTER. The debtor has a right to prefer one creditor and the creditor may seek such preference, even if thereby other creditors are left unprovided for, but it must not be coupled with a design to assist the debtor in cheating or defrauding the other creditors, but mere knowledge of the debtor's illegal object will not invalidate his preference.

2. ———: ———: ADDITIONAL SECURITY. The mere fact that the mortgagee takes an additional mortgage to secure the past due interest on his debt, will not, in itself, constitute fraud in law, even though it apparently increased on the record the amount of the debt.

*Appeal from the Clay Circuit Court.*—HON. E. J. BROADUS, Judge.

AFFIRMED.

STATEMENT.

This is an action in replevin and involves the right and title to about $1,500 worth of cattle, horses, corn, hay, etc., once the property of George Y. Nall, a Clay county farmer. The plaintiff's claim was based on a chattel mortgage made by the said Nall, while the defendant asserted a right by virtue of the levy of an execution, which he as sheriff held on a judgment in favor of F. M. Barnes.

The controversy arises out of about the following state of facts: In the year 1892, and for several years prior thereto, Nall owned and resided on a farm of two hundred and sixty acres, and on which he had made two deeds of trust—the one in favor of one Rogers to secure a note of $4,233, dated January 16,

1886, and the other in favor of plaintiff Russell, to secure a note of $6,000, dated in August, 1887, both said notes bearing eight per cent. compound interest.

Sometime in the spring of 1892, Nall, having defaulted in the payment of both principal and interest on said notes, Rogers and Russell met with Nall and agreed on a reduction of the rate of interest, and Nall then and there agreed to pay up the back interest, which in the matter of Russell's claim amounted to about the sum of $2,000. Nall, however, failed to pay Russell's claim for past due interest, and, feeling insecure in so large an amount (while his security on the land was subject to Rogers' prior incumbrance), Russell asked and on June 30, 1892, secured, of Nall a chattel mortgage on the personal property in controversy to cover the $2,000 interest past due. On that day Nall went to Liberty, made to Russell the note for the above amount due one day after date, and executed a chattel mortgage covering the cattle, horses, grain, etc., then on his farm, and the same was at once placed on record.

A few days after this, Barnes obtained in the circuit court of Clay county, a judgment against Nall for about $4,000; and in the following September, under an execution on said Barnes' judgment, the defendant sheriff levied on the same property that was covered by the Russell mortgage. Russell immediately instituted this action in replevin; and, having secured possession of the property, advertised and sold the same under his chattel mortgage, applying the proceeds towards the payment of his claim against Nall.

At the trial of the cause, by the court sitting as a jury, the following declarations of law were given, at the instance of the plaintiff:

"1. If it appears from the evidence that on the thirtieth day of June, 1892, George Y. Nall was

indebted to the plaintiff in the sum of about $8,000, of which amount $6,000 was principal, and $2,000 was accrued interest thereon — said indebtedness being represented by a note for the sum of $6,000, dated the ——— day of August, 1887, bearing eight per cent. compound interest—and if it further appears that on the said thirtieth day of June, 1892, said George Y. Nall executed to the plaintiff the chattel mortgage read in evidence to secure a note for the sum of $2,000, due one day after date, said note being given for said $2,000 accrued interest on said $6,000 note; and if it further appears that said chattel mortgage was filed for record in the office of recorder of deeds of Clay county on said thirtieth day of June, 1892, then the plaintiff is entitled to recover the property sued for unless it further appears from the evidence that said chattel mortgage was executed by Nall for the purpose of defrauding, or hindering, or delaying his creditors, or concealing, or covering up his property, and unless the plaintiff participated in said fraudulent purpose.

"2. The said George Y. Nall had the legal right to make a preference in favor of the plaintiff as against other creditors, and if he executed the chattel mortgage read in evidence as additional security for the accrued interest on said $6,000 note, and by way of preference in favor of the plaintiff, and not for the purpose of defrauding, or hindering, or delaying other creditors, nor to conceal nor cover up his property, then said chattel mortgage was valid, although the effect of said instrument may have been to hinder or delay other creditors.

"3. If it appears from the evidence that George Y. Nall executed the chattel mortgage read in evidence for the purpose of defrauding or hindering, or delaying his creditors, yet if it further appears from the evi-

dence that plaintiff was a creditor of Nall, and that plaintiff took the chattel mortgage read in evidence as additional security for accrued interest on a $6,000 note due from Nall to plaintiff, then said mortgage was valid as to plaintiff, unless it further appears that the plaintiff participated in the fraudulent purpose of Nall.

"4. If it appears from the evidence that the $2,000 note described in the chattel mortgage read in evidence was taken by Russell to represent the accrued interest on a $6,000 note due from Nall to him, and that the chattel mortgage read in evidence was 'taken as additional security for said accrued interest, and not for the purpose of defrauding, or hindering, or delaying Nall's creditors, or concealing or covering up his property, then the fact that such new note of $2,000 was taken to represent said accrued interest does not invalidate the said transaction."

And at the request of defendant the following:

"2. Even if the court should, under the pleadings and evidence herein, find that said note was given for a lawful consideration, yet, if the court further finds from the evidence that said Nall and Russell both knew of the pendency of said suit of said Francis M. Barnes against said Nall at and before the execution of said chattel mortgage, and that if said Nall remained undefended therein said Barnes would be entitled to judgment at the June term of this court in the year 1892, and that said Nall executed said chattel mortgage in view of an approaching judgment against him in favor of said Barnes and with the intent, not alone to prefer said Russell, but, also, to hinder, delay or defraud said Barnes in the collection of his said debt or to give him, said Nall, some advantage in the management, use or control of the property mentioned in said chattel mortgage, which he would not have if such chattel mortgage were not made, and if the court

finds also, that Russell knew of such intent in advance of such execution, and thereto assisted and therein participated, then the court declares as a matter of law that said chattel mortgage was fraudulent and void as to said Barnes, this defendant and said Nall's other creditors; and the finding of the court herein must be for defendant."

The court's finding and judgment was for the plaintiff, and defendant appealed.

*D. C. Allen* for appellant.

(1) The chattel mortgage has the following badges of fraud: *First.* It was a transfer of all of Nall's property. Bump on Fraudulent Conveyances [3 Ed.], 34. *Second.* It was made when there was a suit pending against Nall, and on the day when the suit was set for trial. Nall and Russell both knew this. Bump on Fraudulent Conveyances [3 Ed.], 37. *Third.* The recitals in it are false in that it was not the intention of the parties to it that sale should occur on default in payment of the note, and in that there was no new consideration for the note. Bump on Fraudulent Conveyances [3 Ed.], 40, 42. *Fourth.* The transaction was out of the usual course of business. Bump on Fraudulent Conveyances [3 Ed.], 51. *Fifth.* Both of the parties agreed, secretly, to the delay in sale beyond the time mentioned in the instrument. Bump on Fraudulent Conveyances [3 Ed.], 51. *Sixth.* It contained a false statement of the consideration. The record of it would show a new consideration, whereas it was antecedent. The chattel mortgage and the deed of trust to Russell, considered together, showed considerations aggregating $10,000, covering all of Nall's real and personal estate, whereas the consideration was only $6,000 and interest. Bump on Fraudulent Convey-

ances [3 Ed.], 42.   (2) The court erred in refusing to give appellant his first and fourth instructions prayed in his series.   Kerr on Frauds and Mistakes [Am. Ed. 1872], pp. 41, 42, 53, 54, 55; *Kehoe v. Taylor*, 31 Mo. App. 588, and see 597; *Huxley v. Rice*, 40 Mich. 73, 81; *Whitmore v. Lodge*, 100 Mo. 36, 46, 47.   The natural, probable, necessary effect of the agreement was to hinder and delay Barnes and other creditors.   *Shelley v. Boothe*, 73 Mo. 74, but see 77; *Van Raalte v. Harrington*, 101 Mo. 602, but see 612; *Seger's Sons v. Thomas Bros.*, 107 Mo. 635, but see 641.

*Simrall & Trimble* and *Sandusky & Sandusky* for respondent.

(1) Even if there had been no agreement between Nall and Russell to execute the chattel mortgage in controversy, Nall had the right to secure Russell in preference to Barnes.   And even if there were a fraudulent intent on the part of Nall, it would not affect Russell unless he participated in it.   *Holmes v. Braidwood*, 82 Mo. 610; *Deering & Co. v. Collins & Son*, 38 Mo. App. 73; *Schroder v. Babbitt*, 108 Mo. 289; *Dougherty v. Cooper*, 77 Mo. 528; *Foster v. Reynolds*, 38 Mo. 553; Jones on Chattel Mortgages [3 Ed.], secs. 85, 90, 92, 94, 96, and cases cited; Jones on Mortgages [4 Ed.], sec. 374.

GILL, J.—As appears from the foregoing statement, this is another of those contests, so often before the courts, wherein two rival creditors have sought to save their claims out of the assets of the insolvent debtor. The real parties in interest here are, Russell claiming under a chattel mortgage executed and recorded June 30, 1892, and Barnes, a subsequent execution creditor. Both appear to have just claims against Nall, the common debtor; and the question is, who, in this race for

preference, is entitled to priority.   On the face of things, Russell—being first in the point of time—has *prima facie* the better right; for the general rule of the law in such cases is, *"first come, first served."* The law unquestionably concedes to Nall, the debtor, the right to prefer Russell, and admits, too, in Russell the right to seek and secure such preference, even if thereby Barnes and other creditors are left unprovided for.

But the defendant, in behalf of Barnes, charges in his answer that by the execution of the chattel mortgage to Russell June 30, 1892, Nall intended to hinder, delay and defraud Barnes, and that Russell knew of such design and took the mortgage to aid Nall in such fraudulent purposes.   If that were true, then it is clear that Russell's pretended mortgage security should be declared void and set aside in favor of the Barnes judgment.   For, as repeatedly decided, while a creditor will be protected in his prior security acquired by his diligence, yet if he take it coupled with a design to assist the debtor in cheating or defrauding other creditors, he will not be allowed to profit thereby.   Mere *knowledge*, however, of the debtor's illegal object in giving the preference will not invalidate the claim of the favored creditor; more is necessary—the creditor must be a party to the fraudulent design.   This, in brief, comprises the general principles of law applicable to controversies of this nature (*Deering v. Collins*, 38 Mo. App. 73; *Shelly v. Booth*, 73 Mo. 74; *Holmes v. Braidwood*, 82 Mo. 610, 616; *Schroeder v. Bobbitt et al.*, 108 Mo. 289), and this law, too, was clearly and intelligently declared by the learned judge who tried this case in the circuit court, as will be seen by reading the instructions quoted in the statement.

Defendant's counsel, however, contends, in substance, that the execution of the $2,000 note and mortgage by Nall to Russell, and placing the same on record,

was, of itself, fraud in law, such as to invalidate Russell's security, and that the court ought to have declared, on that evidence alone, the chattel mortgage to be fraudulent and void. This position is taken because, it is said, it was made to appear of record that Russell's claim was for $10,000, whereas it was only for $8,000 all told. This contention is not maintainable. While this circumstance might be considered, with other evidence, as tending to prove a common design by Nall and Russell to cover up Nall's property and conceal it from other creditors, it surely cannot be regarded as *conclusively* showing such a purpose. Whether said $2,000 note and mortgage is to be considered as additional security for the $6,000 note and interest, or as payment of the interest due to that time, it was entirely legitimate, provided, of course, there was an absence of a real fraudulent purpose on the part of Nall and Russell. It clearly appears from the testimony that it was not intended as a fraudulent inflation of Russell's claim, and the court so found. It is a matter of common occurrence to execute notes and mortgages to secure existing indebtedness, or even to secure future advances or contingent liabilities; and so long as the purposes thereof are honest in fact they are upheld.

In our opinion then the trial court properly declined to give defendant's instructions numbers 1 and 4. *Foster v. Reynolds*, 38 Mo. 553; 1 Jones on Mortgages [4 Ed.], sec. 374.

The judgment herein was for the right party and will be affirmed. All concur.